IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**RICHARD GRAVELY**,

      **Plaintiff,**

v.                                  Case No. 2:13-cv-4209

**CHRISTOPHER ST. CLAIR,**
**SCOTT DEMPSEY, and**
**THE CITY OF CHARLESTON,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

      Plaintiff filed this *pro se* civil action on March 5, 2013, alleging that he had been subjected to an unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution. (ECF No. 2 at 1). After an initial status conference, Plaintiff filed an amended complaint. (ECF No. 7). Now pending before the Court is the Motion of the Defendants for Summary Judgment. (ECF No. 15). Plaintiff has filed a response in opposition to the motion, and the Defendants have filed a reply memorandum. (ECF Nos. 18 & 19).

      This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and is referred to the undersigned United States Magistrate Judge for pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, the undersigned **FINDS** that Defendants' Motion for Summary Judgment is premature, as there are genuine issues of material fact in dispute. Accordingly, the undersigned

further **RECOMMENDS** that the motion be **DENIED, without prejudice,** to allow the parties an opportunity to engage in discovery.

I. <u>**Factual and Procedural Background**</u>

On February 1, 2013 at around 3 p.m., two Charleston police officers approached Plaintiff Richard Gravely ("Gravely") inside of Charleston City Hall. (ECF No. 2 at 1). According to one of the officers, Defendant St. Clair, he observed that Gravely "had similar skin tone, facial features, graying hair, and was wearing the same type of jacket" as an unknown suspect from a bank robbery that had occurred five hours earlier, approximately two miles from City Hall. (ECF No. 15-1 at 2). Officer St. Clair alleges that when he approached Gravely with a picture of the robbery suspect in order to more closely compare him to the photograph, Gravely "took an aggressive posture and his verbal responses to [Officer St. Clair's] questions did not dispel [his] belief that Plaintiff may be the suspect depicted in the picture." (*Id.* at 3). For safety reasons, the officers handcuffed Gravely, then searched and detained him while they compared his appearance to that of the suspect. When it was determined that Gravely was not the suspect, he was released.

Gravely describes the incident differently. According to Gravely, he went to City Hall on February 1, 2013 to pay a traffic ticket. (ECF No. 18 at 1). While there, he was approached by the defendant police officers and questioned about a bank robbery that had occurred earlier in the day. Gravely asserts that "[c]ontrary to popular belief that all black people look alike[,] [t]he Plaintiff and alleged suspect charged for this robbery looked nothing alike." (ECF No. 7 at 1). Gravely denies that he acted aggressively toward the officers or was ever a threat to safety, and asserts that he "knew he had not committed any bank robberies, therefore, he had no reason to assert any aggression

toward the Defendants or make any attempt to flee the investigatory approach." (ECF No. 18 at 1). Despite lacking cause for their behavior, the officers subjected Gravely to "an unreasonable seizure." (*Id.*).

Gravely provides City Hall videotaped surveillance footage of the incident, (ECF No. 7-1), which he alleges has been edited and does not reflect the entirety of his encounter with the officers. (ECF No. 18 at 1). The surveillance video shows that on February 1, 2013, at approximately 3:08 p.m., Gravely entered the Clerk's office and stood at the counter. While waiting for the Clerk, Gravely took a sheet of paper towel from a roll sitting on the counter and blew his nose. Two officers then entered the Clerk's office, one of whom had a flyer in hand; the officer with the flyer approached Gravely who was leaning on the counter. Some words were exchanged between Gravely and the officer. As Gravely began to blow his nose again, the officer placed Gravely against the wall of the Clerk's office; the officers then proceeded to handcuff Gravely. They searched his person and removed items from his pockets; all while comparing him to the flyer. Additional individuals entered and exited the Clerk's office, comparing Gravely to the flyer, and taking photographs of Gravely with and without his eyeglasses. After approximately ten minutes, the officer who first approached Gravely removed the handcuffs, returned Gravely's belongings to him, and exited the Clerk's office. (ECF No. 7-1).

## II. **Plaintiff's Claims**

Gravely claims that the individual defendants "unlawfully searched and handcuffed" him, in violation of the Fourth Amendment. (ECF No. 2 at 1). He appears to argue that (1) the individual defendants lacked reasonable suspicion to conduct an investigative *Terry* stop, and (2) even if they had reasonable suspicion, the individual

3

defendants exceeded the lawful bounds of a *Terry* stop when they handcuffed him and searched his person. (ECF Nos. 7 at 1-2; 18 at 1).

Regarding the City of Charleston, Gravely asserts that the city "is the employer of Charleston Police Department, and is responsible for training each employee to protect not violate the Constitutional rights of the people." (ECF No. 7 at 3). Thus, Gravely bases his claims against the City of Charleston on theories of (1) *respondeat superior* and (2) failure to adequately train its employees. Gravely seeks one million dollars in damages from the Defendants.

### III.    Motion for Summary Judgment

In their Motion for Summary Judgment, the Defendants assert that (1) Gravely has failed as a matter of law to demonstrate a Fourth Amendment violation, (2) the individual defendants are entitled to qualified immunity, and (3) Gravely has failed to state a *prima facie Monell* claim against the City of Charleston. (ECF No. 15 at 1). Defendants argue that their temporary search and seizure of Gravely constituted a lawful *Terry* stop, on the grounds that "they had a picture of the suspect that closely resembled the characteristics of Plaintiff" and that "Plaintiff's reaction heightened the risk to public safety under these circumstances." (ECF No. 16 at 6-7). The defendants further assert that handcuffing Gravely was reasonable because they "had been informed that the robbery suspect was armed and dangerous." (ECF No. 19 at 3-4).

In contrast, Gravely both denies that he resembled the robbery suspect and denies that he asserted any aggression toward the officers or behaved in any other threatening manner. (ECF Nos. 7 at 1; 18 at 1). He further argues that the officers' failure to pursue a less intrusive method of inquiry was unreasonable. (ECF No. 7 at 1).

IV.     **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its existence or absence might affect the outcome of the case under the applicable law; a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). When the defendant is the moving party, it may meet this burden by showing that plaintiff lacks proof to establish one or more of the essential elements of its case. *Celotex Corp.,* 477 U.S. at 323. If the defendant successfully makes this showing, the burden shifts to the plaintiff to demonstrate that specific, material facts exist, which provide a genuine issue for trial. *Id.* at 322. The plaintiff cannot survive summary judgment by simply relying upon its own allegations or denials or by "mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985) "The mere existence of a scintilla of evidence" supporting the plaintiff's case is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252. However, when assessing the viability of a *pro se* complaint, the court should construe the allegations liberally; [l]iberal construction of the pleadings is particularly appropriate where ... there is a *pro se* complaint raising civil rights issues." *Smith v. Smith,* 589 F.3d 736, 738 (4th Cir.2009) (*quoting Loe v. Armistead,* 582 F.2d

5

1291, 1295 (4th Cir.1978)).

When determining if the defendant has met its initial burden under Rule 56, the court must view the evidence and make all reasonable inferences in a light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court does not weigh the evidence or determine the truth of the matter, but rather discerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52.

## V.     Discussion

As a general rule, summary judgment is only appropriate after there has been adequate time for discovery. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Indeed, the Federal Rules require that the plaintiff must demonstrate the existence of a genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Thus, by its nature, summary judgment presupposes a record that has been developed through discovery. *Greater Baltimore Ctr for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007)). In this case, the parties dispute the circumstances surrounding Gravely's interaction with the officers, and discovery has not yet been conducted. Accordingly, genuine issues of material fact exist

that make summary judgment inappropriate at this time.

### A. Individual Defendants

The Fourth Amendment protects the right of people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amd. IV. As a general rule, "a search or seizure without probable cause is unreasonable and, thus, unconstitutional." *United States v. McCoy*, 513 F.3d 405, 410 (4th Cir. 2008) (citing *Kyllo v. United States*, 533 U.S. 27, 32, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)). However, under *Terry v. Ohio*, "an officer may conduct a brief investigatory stop where the officer has reasonable suspicion but not probable cause to believe that criminal activity may be afoot." *United States v. Davis*, 383 Fed. Appx. 269, 273 (4th Cir. 2010) (internal quotations omitted). Although "reasonable suspicion" requires more than a mere hunch, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In determining the validity of a *Terry* stop, "[a] court must look to the totality of the circumstances in determining whether the requisite reasonable suspicion existed." *McCoy*, 513 F.3d at 411. Nevertheless, "it is necessary to discuss the individual factors relied upon by law enforcement, both to verify their existence in the case at bar and for their probative value as a link to illegal activity." *United States v. Newland*, 246 Fed. Appx. 180, 196 (4th Cir. 2007). Thus, in order to justify a *Terry* stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

During a *Terry* stop, "an officer may take actions that are reasonably necessary to assure his safety and effectuate the investigatory purpose of the stop." *United States v. Lesane*, 498 Fed. Appx. 363, 365 (4th Cir. 2012); *see also United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1984). Consequently, "on the reasonable belief that a suspect may be dangerous. . . an officer may apply handcuffs to mitigate that risk while effectuating a *Terry* stop." *Lesane*, 498 Fed. Appx. at 366. Likewise, "if the officer has a 'reasonable fear for his own and others' safety" based on an articulable suspicion that the suspect may be 'armed and presently dangerous,' the officer[s] may conduct a protective search of, *i.e.*, frisk, the outerlayers of the suspect's clothing for weapons." *United States v. Holmes*, 376 F.3d 270, 275 (4th Cir. 2004) (quoting *Terry*, 392 U.S. at 30-31); *United States v. Raymond*, 152 F.3d 309, 312 (4th Cir. 1998) ("The reasonableness of the search is measured objectively. If a reasonably prudent person would believe that his safety, or the safety of others, is endangered, he may conduct a limited search of outer clothing to discover any weapons.").

Even "when reasonable suspicion exists it still must be balanced against the intrusiveness and scope of the stop." *United States v. Jackson*, 680 F.Supp.2d 772, 777 (S.D.W.V. 2009). Therefore, under the "plain feel" doctrine, if, while conducting a pat down, an officer "feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *United States v. Jones*, 289 Fed. Appx. 593, 598 (4th Cir. 2008) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)); *United States v. Roach*, 477 Fed. Appx. 993, 999 (4th Cir. 2012). However, "[a]n officer is not justified in conducting a general exploratory search for evidence under the guise of a stop-and-frisk." *United States v. Swann*, 149

8

F.3d 271, 274 (4th Cir. 1998). "An officer's squeezing, sliding and otherwise manipulating the contents of a defendant's pocket, if the officer knows the pocket contains no weapon, is prohibited." *Id.* at 275 (quoting *Dickerson*, 508 U.S. at 378) (internal marks omitted). Rather, "once an officer has determined that the object is not a weapon and its shape or size does not indicate its contraband nature, the search must stop." *United States v. Works*, 338 Fed. Appx. 295, 299 (4th Cir. 2009); *Raymond*, 152 F.3d at 312 (citing *Dickerson*, 508 U.S. at 378); *see also United States v. Goodman*, No. 93-5208, 1993 WL 533205, at *7 (4th Cir. 1993) (discussing reasonableness of a police officer's decision to remove the contents of a suspect's pocket).

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The Supreme Court has developed a two-prong test for determining the applicability of qualified immunity in a particular action. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Pearson*, 555 U.S. at 232. First, "a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and second, "the court must decide whether the right at issue was clearly established at the time of defendants' alleged misconduct." *Pearson*, 555 U.S. at 232 (internal citations omitted). In making the second assessment, the court ascertains "whether a reasonable official could have believed the challenged conduct to be lawful, in light of clearly established law." *Meeker v. Edmundson,* 415 F.3d 317, 323 (4th Cir. 2005) (internal marks omitted) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). It is not mandatory that both prongs of the test be performed, if analysis under

9

one prong resolves the issues. *Pearson*, 555 U.S. at 236. Thus, "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity," and the suit is barred. *Saucier*, 533 U.S. at 201. Similarly, if the constitutional right claimed to have been violated was not clearly established at the time of the alleged violation, it is unnecessary for the court to determine if a violation actually occurred. *Pearson*, 555 U.S. at 237. However, if the allegations indicate that a constitutional violation occurred, then the reasonableness of the official's action must be examined in light of the clearly established law in effect at the time. If the constitutional right was not clearly established at the time of the violation, qualified immunity applies. *Id.* at 244.

Defendants argue that their temporary search and seizure of Gravely constituted a lawful *Terry* stop, on the grounds that "they had a picture of the suspect that closely resembled the characteristics of Plaintiff" and that "Plaintiff's reaction heightened the risk to public safety under these circumstances." (ECF No. 16 at 6-7). Defendants further assert that handcuffing Gravely was reasonable because they "had been informed that the robbery suspect was armed and dangerous." (ECF No. 19 at 3-4). However, as previously stated, Gravely both denies that he resembled the robbery suspect and that he asserted any aggression toward the Defendants or behaved in any other threatening manner. (ECF Nos. 7 at 1; 18 at 1). He further argues that Defendants acted unreasonably when they handcuffed him without cause and emptied his pockets. (ECF No. 7 at 1). At this early stage of litigation, neither party has provided photographic evidence of the robbery suspect, and the surveillance footage of Gravely's search and seizure is not inconsistent with his version of the facts. Assuming, as Gravely alleges, that he neither resembled the robbery suspect pictured in the police bulletin, nor acted

aggressively toward the officers, the undersigned cannot conclude as a matter of law that Defendants had reasonable suspicion to conduct an investigative *Terry* stop, handcuff Gravely, and remove and examine the items in his pockets.

Defendants cite *United States v. Hensley* for the proposition that "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information." *Hensley*, 469 U.S. at 232. However, the issue in *Hensley* was the validity of "a stop of a person by officers in one police department in reliance on a flyer issued by another department indicating that the person is wanted for investigation of a felony." *Id.* at 229. There, the Supreme Court held that "[a]ssuming the police make a *Terry* stop in objective reliance on a flyer or bulletin," such a stop was permissible "if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop." *Id.* at 233 (emphasis in original). However, the Supreme Court stressed that "[i]t is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it." *Id.*

In the present case, Gravely does not contest the validity of the robbery suspect bulletin, nor does he object generally to reasonable reliance on such bulletins. Indeed, if the picture of the suspect "closely resembled the characteristics of Plaintiff" as alleged by the Defendants, then they would likely have reasonable suspicion to conduct an investigatory *Terry* stop. However, for the purposes of this motion, the Court must assume, as Gravely alleges, that he looked nothing like the robbery suspect, which would arguably render unreasonable the Defendants' reliance upon the police bulletin to justify

11

a *Terry* stop. Likewise, the scope of the seizure, which involved handcuffing Gravely and removing the contents of his pockets, might well have exceeded the lawful limits of a *Terry* stop if Gravely neither reasonably resembled the robbery suspect photograph, nor acted in a way that provided the officers with a reasonable belief that he was dangerous. Although Defendants urge that qualified immunity "is not stripped simply because the individual proves not to be the desired suspect," (ECF No. 16 at 9), an officer's actions must still be "objectively reasonable in light of the facts and circumstances confronting them," *Henry v. Purnell*, 652 F.3d 524, 535 (4th Cir. 2011). Given the unresolved issues of material fact surrounding the incident, it is simply too early to determine the legitimacy of the *Terry* stop, or whether the individual defendants are entitled to qualified immunity. *Jiggets ex rel. S.J. v. Long*, 510 Fed. Appx. 278, 287 n.5 (4th Cir. 2013) (noting that defendants could file a further motion for summary judgment on the ground of qualified immunity at the conclusion of discovery).

Accordingly, the undersigned **FINDS** that there are genuine issues of material fact in dispute, and respectfully **RECOMMENDS** that the District Court **DENY** the Motion for Summary Judgment of the individual defendants as it is premature.

### B. Municipal Liability

It is well settled that "municipalities are not liable pursuant to respondeat superior principles for all constitutional violations of their employees simply because of the employment relationship." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *Connick v. Thompson*, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) ("[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their

employees' actions.") (internal citations omitted).

However, a municipality may be liable under § 1983 where a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 411, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S,Ct, 915, 99 L.Ed.2d 107 (1988) ("[M]unicipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered.") (internal quotations omitted); *Edwards*, 178 F.3d at 244 (municipal liability results when the execution of an unconstitutional governmental policy or custom inflicts injury); *Jordon by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) ("Section 1983 plaintiffs seeking to impose liability on a municipality must. . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights.").

Defendants seek dismissal of the City of Charleston as a defendant on the ground that Gravely's "complaint fails to adequately plead any municipal policy or custom which would support a *Monell* claim." (ECF No. 16 at 11).[1] However, Gravely asserts that the City of Charleston is liable for the alleged Fourth Amendment violations on grounds that the City "is the employer of Charleston Police Department, and is responsible for

---

[1] Although Defendants have moved for Summary Judgment, their motion with respect to the City of Charleston would seem to be more appropriately construed as a Rule 12(b)(6) Motion to Dismiss, as it relies entirely upon the contents of the complaint, no responsive pleadings have been filed, and there has been no discovery exchanged to date. Fed. R. Civ. P. 12(b).

13

training each employee to protect not violate the Constitutional rights of the people." (ECF No. 7 at 3). To the extent Gravely seeks to hold the City of Charleston liable on a theory of *respondeat superior*, his claim is clearly foreclosed. On the other hand, if Gravely is alleging that his constitutional rights were violated as a result of the City of Charleston's failure to adequately train its police officers to conduct searches and seizures in accordance with the requirements of the Fourth Amendment, then he has stated a viable claim, as the inadequacy of police training may serve as the basis for § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *Hall v. Burney*, 454 Fed. Appx. 149, 151 (4th Cir. 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Although Gravely may ultimately be unable to satisfy the stringent standards of deliberate indifference, "the validity of his claims cannot be determined until the facts surrounding his allegations are developed." *Hall*, 454 Fed. Appx. 149, 152 (4th Cir. 2011) (denying dismissal of plaintiff's failure to train claim against municipal defendant).

Thus, the undersigned **FINDS** that Gravely has stated a viable claim for municipal liability, and respectfully **RECOMMENDS** that the District Court **DENY** the Defendants' Motion to dismiss the City of Charleston as it is likewise premature.

## VI. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **DENY, without prejudice,** Defendants' Motion for Summary Judgment, (ECF No. 15), at this time to allow the parties an opportunity to conduct discovery.

14

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Johnston, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, the Defendants, and any counsel of record.

**FILED:** October 1, 2013.

_____
Cheryl A. Eifert
United States Magistrate Judge